# 14-1473-cv

# United States Court of Appeals
## for the
## Second Circuit

M.O., and G.O., individually and on behalf of D.O., a minor,

*Plaintiffs-Appellants,*

– v. –

NEW YORK CITY DEPARTMENT OF EDUCATION,

*Defendant-Appellee.*

———————————————

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF and SPECIAL APPENDIX FOR PLAINTIFFS-APPELLANTS

LAWRENCE D. WEINBERG, ESQ.
*Attorney for Plaintiffs-Appellants*
162 Williamson Avenue
Bloomfield, New Jersey 07003
(973) 748-3761

# TABLE OF CONTENTS

Table of Contents .............................................................................. i

Table of Authorities ..................................................................... iii

Jurisdictional Statement ................................................................ 1

Statement of Issues Presented for Review ..................................... 1

Statement of the Case, Facts, and Procedural History .................. 2

Summary of the Argument .............................................................. 4

Argument ........................................................................................ 6

Point I:   A School District Proposed Placement Under the IDEA
Cannot be Found Appropriate when the School District
Does Not Present Any Evidence of the Location's Ability
to Implement the Individualized Education Program and
the Parent Testified that the Location Was Not
Appropriate .................................................................. 6

A.   Legal Framework ............................................. 6

B.   The Only Evidence Presented Was that the
Physical Location Offered was Not Appropriate ........... 7

C.   Substantive Compliance with the IDEA Includes
an Appropriate IEP and an Appropriate Placement ....... 13

1.   The structure of the IDEA and federal
regulations require that an IEP be
implemented appropriately .................................. 14

2.   The vast majority of cases supports the
conclusion that an IEP must be implemented
in an appropriate classroom .................................. 15

D.   R.E. Did Not Hold that the Classroom Location
was Irrelevant ................................................ 27

i

Point II:  A School District Proposed Placement Under the IDEA
          Cannot be found Appropriate when the District Does Not
          Present any Evidence of the Location's Ability to
          Implement the Individualized Education Program under
          New York State Law, Which Places the Burden of
          Production on Such Issue on the School District .................... 36

Conclusion ................................................................................... 41

# TABLE OF AUTHORITIES

**Cases**

*A. M. v. Monrovia Unified Sch. Dist.*, 627 F.3d 773 (9th Cir. 2010) ........... 16

*A.D. v. N.Y. City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 38757
   (S.D.N.Y. Mar. 19, 2013)........................................................................ 34

*A.E. ex rel. Mr. and Mrs. E. v. Westport Bd. Of Educ.*,
   251 Fed.Appx. 685 (2d Cir. 2007) ............................................................ 6

*A.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, *reh'g en banc denied*,
   497 F.3d 409 (4th Cir. 2007), *cert. denied*, 552 U.S. 1170 (2008)........... 26

*B.M. v. New York City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 68526
   (S.D.N.Y. May 14, 2013), *aff'd,* 2014 U.S. App. LEXIS 11406
   (2d Cir. N.Y. June 18, 2014) .................................................................... 34

*B.R. v. New York City Dep't of Educ.*, 910 F. Supp. 2d 670
   (S.D.N.Y. 2012) ....................................................................................... 28

*Board of Educ. v. Rowley*, 458 U.S. 176 (1982)................................. 6, 15, 39

*Brillon v. Klein Indep. Sch. Dist.*, 100 Fed. Appx. 309 (5th Cir. 2004)....... 16

*Burke v. Keenum*, 1989 U.S. Dist. LEXIS 1666 (S.D. Ga. 1989) ................ 18

*Connor v. New York City Dep't of Educ.*, 2009 U.S. Dist. LEXIS
   98605 (S.D.N.Y. 2009) ....................................................................... 11, 23

*D.C. ex rel. E.B. v. New York City Dep't of Educ.*, 2013 U.S. Dist.
   LEXIS 42764 (S.D.N.Y. Mar. 25, 2013) ........................................... 28, 34

*D.N. v. Walcott*, 2012 U.S. Dist. LEXIS 177522 (S.D.N.Y. Dec. 7,
   2012), *stay pending appeal denied*, 2013 U.S. Dist. LEXIS 9143
   (S.D.N.Y. Jan. 22, 2013) ......................................................................... 34

*Damian J. v. Sch. Dist. of Phila.*, 2008 U.S. Dist. LEXIS 4560
   (E.D. Pa. Jan. 22, 2008)........................................................................... 18

*Doe v. Hampden-Wilbraham Reg'l Sch. Dist.*, 715 F. Supp. 2d 185
   (D. Mass. 2010) ........................................................................................ 17

*E.A.M. v. N.Y. City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 143266
(S.D.N.Y. 2012) ........................................................................ 23

*E.M. v. New York City Dep't of Educ.*, 2014 U.S. App. LEXIS 13257
(2d Cir. July 11, 2014) .............................................................. 30

*E.M. v. New York City Dep't of Educ.*, 2011 U.S. Dist. LEXIS 29074
(S.D.N.Y. 2011)*, vacated and remanded,* 2014 U.S. App. LEXIS
13257 (2d Cir. July 11, 2014) ................................................... 22

*F.B. v. N.Y. City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 20221
(S.D.N.Y. 2013) ........................................................................ 34

*F.L. v. N.Y. City Dep't of Educ.*, 553 Fed. Appx. 2
(2d Cir. N.Y. 2014) ................................................................... 30

*F.L. v. N.Y. City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 149296
(S.D.N.Y. 2012), *aff'd,* 553 Fed. Appx. 2 (2d Cir. N.Y. 2014) ............... 33

*Florence County School Dist. Four v. Carter*, 510 U.S. 7 (1993) ................ 7

*Forest Grove School Dist. v. T.A.*, 557 U.S. 230  (2009) ............................... 7

*Frank G. v. Bd. of Educ.*, 459 F.3d 356 (2d Cir. 2006), *cert. denied*,
*Board of Educ. of Hyde Park Cent. School Dist. v. Frank G.*,
552 U.S. 985 (2007) ................................................................... 6

*Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105 (2d Cir. 2007) ........ 12

*J.F. v. N.Y. City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 170637
(S.D.N.Y. 2012), *reh'g denied*, 2013 U.S. Dist. LEXIS 63178
(S.D.N.Y. Apr. 24, 2013) ........................................................... 33

*J.F. v. New York City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 63178
(S.D.N.Y. Apr. 24, 2013) ........................................................... 32

*J.G. v. Kiryas Joel Union Free Sch. Dist.*, 777 F. Supp. 2d 606
(S.D.N.Y. 2011) ........................................................................ 36

*J.M. v. New York City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 159533
(S.D.N.Y. Nov. 7, 2013) ............................................................ 35

*J.P. v. County Sch. Bd.*, 447 F. Supp. 2d 553 (E.D. Va. 2006) ................... 18

*J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635
(S.D.N.Y. 2011) ................................................................ passim

*K.L. v. New York City Dep't of Educ.*, 530 Fed. Appx. 81
(2d Cir. N.Y. 2013) .................................................................. 32

*K.L. v. New York City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 124460
(S.D.N.Y. 2012), *aff'd,* 530 Fed. Appx. 81 (2d Cir. 2013) ...................... 24

*M.H. v. New York City Dep't of Educ.*, 2011 U.S. Dist. LEXIS 17306
(S.D.N.Y. Feb. 16, 2011) ......................................................... 24

*M.H. v. New York City Dep't of Educ.*, 685 F.3d 217
(2d Cir. 2012) ...................................................... 11, 19, 20, 28

*M.H. v. New York City Dep't of Educ.*, 712 F. Supp. 2d 125
(S.D.N.Y. 2010), *aff'd,* 685 F.3d 217 (2d Cir. 2012)............................... 19

*M.P.G. v. New York City Department of Education*, 2010 U.S. Dist.
LEXIS 88777 (S.D.N.Y. 2010) ........................................................ 22, 25

*M.S. v. New York City Dep't of Educ.*, 2010 U.S. Dist. LEXIS 144666
(S.D.N.Y. 2010), *aff'd, M.H. v. New York City Dep't of Educ.*,
685 F.3d 217 (2d Cir. 2012)...................................................... 25

*Muller v. Committee on Special Educ. of E. Islip Union Free Sch.
Dist.*, 145 F.3d 95 (2d Cir. 1998) ............................................... 14

*N.Y. City Dep't of Educ. v. V.S.*, 2011 U.S. Dist. LEXIS 83309
(E.D.N.Y. 2011) ....................................................................... 24

*Neosho R V Sch. Dist. v. Clark*, 315 F.3d 1022 (8th Cir. 2003)................... 16

*O.O. ex rel. Pabo v. District of Columbia*, 573 F. Supp. 2d 41
(D.D.C. 2008)...................................................................... 18, 26

*P.K. v. New York City Dep't of Educ.*, 526 Fed. Appx. 135
(2d Cir. N.Y. 2013) .............................................................. 29, 37

*R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2d Cir.
Sept. 20, 2012), *cert. denied*, 133 S. Ct. 2802 (2013)............... 5, 15, 21, 22

*R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003 (5th Cir. 2010),
   *cert. denied*, 131 S. Ct. 1471 (2011) ......................................................... 16

*Reyes v. N.Y. City Dep't of Educ.*, 2014 U.S. App. LEXIS 14224
   (2d Cir. N.Y. July 25, 2014).......................................................... 29

*S.F. v. N.Y. City Dep't of Educ.*, 2011 U.S. Dist. LEXIS 129672
   (S.D.N.Y. Nov. 9, 2011) ...................................................... 17, 24

*Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H.
   by & through Holland*, 14 F.3d 1398 (9th Cir. 1994),
   *cert. denied*, 512 U.S. 1207 (1994) .......................................... 17

*Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359
   (1985) ..................................................................... 3, 7, 14, 15

*Schaffer v. Weast*, 546 U.S. 49 (2005)................................................. 5, 13, 36

*Scott v. N.Y. City Dep't of Educ.*, 2014 U.S. Dist. LEXIS 41283
   (S.D.N.Y. Mar. 25, 2014)............................................................ 35

*Still v. DeBuono*, 101 F.3d 888 (2d Cir. 1996)................................................. 7

*Sumter County Sch. Dist. 17 v. Heffernan*, 642 F.3d 478
   (4th Cir. 2011) ........................................................................ 16

*T.L. v. N.Y. City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 53090
   (E.D.N.Y. Apr. 12, 2013) ........................................................... 34

*T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d 572
   (3d Cir. 2000) ......................................................................... 17

*T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412 (2d Cir. 2009),
   *cert. denied*, 560 U.S. 904 (2010) ...................................... passim

*Thies v. N.Y. City Bd. of Educ.*, 2008 U.S. Dist. LEXIS 11354
   (S.D.N.Y. Feb. 4, 2008) .............................................................. 25

*V.S. v. New York City Dep't of Educ.*, 2014 U.S. Dist.
   LEXIS 79067 (E.D.N.Y. June 9, 2014) ....................................... 12, 28, 35

*Van Duyn v. Baker Sch. Dist.*, 502 F.3d 811 (9th Cir. 2007) ....................... 16

*W.T. v. Bd. of Educ. of the Sch. Dist. of N.Y. City*, 716 F. Supp. 2d 270
(S.D.N.Y. 2010) .................................................................. 24, 25

*Wall by Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F. Supp. 501
(E.D.N.Y. 1996) ....................................................................... 25

*Ward v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*,
2014 U.S. App. LEXIS 10052 (2d Cir. N.Y. May 30, 2014) ............... 1, 30

*Wilkins v. District of Columbia*, 571 F. Supp. 2d 163 (D.D.C. 2008).......... 18

*Wilson v. District of Columbia*, 770 F. Supp. 2d 270 (D.D.C. 2011) .......... 17

*X v. New York State Educ. Dep't*, 975 F. Supp. 546 (S.D.N.Y. 1997)......... 17

**Statutes and Regulations**

20 U.S.C. § 1400 ...................................................................... 6

34 C.F.R. § 300.101 .................................................................. 14

34 C.F.R. §323 ......................................................................... 14

8 N.Y.C.R.R. 200.6..................................................................... 11, 23

NY Educ. Law § 4404 ........................................................... passim

NY Educ. Law §4404................................................................. 36

**Other Authorities**

2007 Update from the New York State Assembly,
Education Committee............................................................... 36, 38

N.Y. Laws 2007, c. 583 ............................................................. 36

## JURISDICTIONAL STATEMENT

This action is brought pursuant to the Individuals with Disabilities Education Improvement Act (formerly the Individuals with Disabilities Education Act), 20 U.S.C. § 1401, *et seq.* (hereafter the "IDEA"), which ensures a learning-disabled child's right to a free appropriate public education. Jurisdiction of the U.S. District Court of the Southern District of New York was invoked under 20 U.S.C. § 1415(i)(2) providing for jurisdiction and a right of action for a party "aggrieved by the findings and decision" of an impartial due process hearing under the IDEA. Jurisdiction was also conferred by 28 U.S.C. § 1331, providing for jurisdiction of all civil actions arising under the laws of the United States.

Jurisdiction in the Second Circuit arises under 28 U.S.C. § 1291, as appellants appeal a final decision from the Southern District of New York (S.D.N.Y). Joint Appendix, p. (hereinafter "JA") 102-10.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Issue I: Can a school district proposed placement under the IDEA be found appropriate when the school district does not present any evidence of the location's ability to implement the Individualized Education Program and the parent testified that the location was not appropriate?

Standard of Review: *de novo*. *Ward v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*, 2014 U.S. App. LEXIS 10052 (2d Cir. May 30, 2014)

1

Issue II: Can a school district proposed placement under the IDEA be found appropriate when the district does not present any evidence of the location's ability to implement the Individualized Education Program under New York State law, which places the burden of production on such issue on the school district?

Standard of Review: *de novo*. *Id.*

## STATEMENT OF THE CASE, FACTS, AND PROCEDURAL HISTORY

Appellants M.O. and G.O. (hereinafter "parents") are the parents of a learning-disabled child D.O. (hereinafter the "child"). Parents and child live in the school district operated by the appellee, the New York City Department of Education ("DOE"). The DOE acknowledged that the child is learning-disabled and entitled to a free appropriate public education under the IDEA. Confidential Appendix p. (hereinafter "CA") 223-37.

This appeal relates to the child's education program during the 2011-2012 school year. On June 9, 2011, pursuant to the IDEA, a DOE committee on special education met and generated an Individualized Education Plan ("IEP") for the child (the June 9, 2011 IEP") for the 2011-2012 school year. CA 223-37. Subsequently, the DOE offered the child a placement at a DOE public school. CA 153-56. Parents have always contended that either the June 9, 2011 IEP and/or the proposed district physical placement were not appropriate for the child.

The parents sent the child to the Lowell School, a New York State approved private special education school, for the 2011-2012 school year and sought reimbursement from the DOE for Lowell School under *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985). Under *Burlington* a parent may be reimbursed for tuition if (1) the district-provided services are inadequate; (2) the private education services obtained by the parent are appropriate; and (3) equitable considerations favor repayment.

Pursuant to 20 U.S.C. § 1415(f) (the IDEA) and 8 N.Y.C.R.R. § 200.5(i) (New York State regulations enacted pursuant to the IDEA), on September 19, 2011, parents initiated an administrative due process proceeding against the DOE, in order to secure reimbursement for tuition at the Lowell School. CA 178-85. An impartial hearing took place over one day and an Impartial Hearing Officer Issued a decision on January 24, 2012 (the "IHO decision"). The IHO Decision found that the child was provided with a free appropriate public education. CA 20-30. Parents appealed the IHO decision to New York State's second administrative review tier, the State Review Officer of the New York State Education Department (hereinafter "SRO"). The SRO issued a decision on April 6, 2012 (hereinafter the "SRO Decision"). CA 7-10. The SRO Decision also ruled in favor of the DOE. *Id.* Parents appealed to S.D.N.Y. JA 4-28. On March 27, 2014, Judge Miriam

Goldman Cedarbaum *aff'd,* the decision of the SRO. JA 102-09. Parents filed their notice of appeal on April 25, 2014. JA 111.

In their due process complaint, parents made several allegations that the proposed school could not appropriately implement the IEP. CA 180-82. These allegations were supported by the parents' letters and testimony. CA 153-57; CA 114. The DOE did not put in any testimonial or documentary evidence that the proposed physical school location could implement the IEP appropriately. CA 75-89; CA 176-237. This case only relates to the 2011-2012 school year. For the 2012-2013 school year the DOE placed the child at the Lowell School. JA 70-89.

## <u>SUMMARY OF THE ARGUMENT</u>

D.O. is a learning disabled child entitled to a free appropriate public education. CA 223-37; 20 U.S.C. § 1401. An IEP is a document. It must be implemented or be "in effect" to provide a child with a free appropriate public education. 20 U.S.C. § 1401(9)(D); 20 U.S.C. § 1412 (a)(22)(B) 34 C.F.R. § 300.101. Here parents alleged that the proposed school location was not appropriate and, therefore, could not appropriately implement the IEP. CA 180-82. Although parents made these allegations, which were supported by letters and the parents' testimony, the DOE failed to put on any evidence that they had offered a school that could implement the IEP. Compare CA 153-57; CA 114 with CA 75-89; CA 176-237.

4

The structure of the IDEA and vast majority of case law demonstrate that an impartial hearing does not merely whether an IEP was appropriate. Whether the proposed physical location is capable of implementing the IEP is a legitimate and important inquiry under the IDEA. Because parents presented evidence that the location was not appropriate they met the burden under the IDEA. *Schaffer v. Weast*, 546 U.S. 49 (2005). Moreover, under New York State law, the district had the burden of proof to demonstrate that the proposed location was appropriate. NY Educ. Law § 4404(1)(c). Having presented no evidence, the district cannot have met its burden of proof.

A statement by this court in *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 195 (2d Cir. 2012) has suggested that "Speculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement." However, the lower court over read this statement. The next sentence in *R.E.* noted, "A suggestion that some students are underserved cannot overcome the "particularly important" deference that we afford the SRO's assessment of the plan's substantive adequacy." *R.E.* is limited to rank speculation. *R.E.* did not eliminate an examination of the proposed location's ability to implement the IEP when the parent has specific legitimate concerns based on a visit.

# ARGUMENT

# POINT I: A SCHOOL DISTRICT PROPOSED PLACEMENT UNDER THE IDEA CANNOT BE FOUND APPROPRIATE WHEN THE SCHOOL DISTRICT DOES NOT PRESENT ANY EVIDENCE OF THE LOCATION'S ABILITY TO IMPLEMENT THE INDIVIDUALIZED EDUCATION PROGRAM AND THE PARENT TESTIFIED THAT THE LOCATION WAS NOT APPROPRIATE

### A.    *Legal Framework*

The IDEA is designed to ensure that all children with disabilities are provided with a free appropriate public education. 20 U.S.C. § 1400(d)(1)(A); see 20 U.S.C. § 1412(a)(1)(A). Pursuant to the IDEA, a school district must provide each disabled child with "special education and related services," 20 U.S.C. § 1401(9), that are "reasonably calculated to enable the child to receive educational benefits," *Board of Educ. v. Rowley*, 458 U.S. 176, 207 (1982). A free appropriate public education "must include special education and related services tailored to meet the unique needs of a particular child, and be reasonably calculated to enable the child to receive educational benefits." *Frank G. v. Bd. of Educ.*, 459 F.3d 356, 363 (2d Cir. 2006), *cert. denied*, *Board of Educ. of Hyde Park Cent. School Dist. v. Frank G.*, 552 U.S. 985 (2007); *A.E. ex rel. Mr. and Mrs. E. v. Westport Bd. Of Educ.*, 251 Fed.Appx. 685, 687 (2d Cir. 2007)

When a school district fails to provide a disabled child with a free appropriate public education, parents who unilaterally place their special needs child in a private school may be reimbursed for tuition if three requirements are

met: (1) the district-provided services are inadequate; (2) the private education services obtained by the parent are appropriate; and (3) equitable considerations favor repayment. *Sch. Comm. of Burlington v. Dep't of Educ.*, 471 U.S. 359 (1985); *Still v. DeBuono*, 101 F.3d 888, 891 (2d Cir. 1996). When the three *Burlington* prongs are satisfied, parents who have unilaterally placed their child in a private school may obtain reimbursement for the cost of the private school tuition even when the school chosen by the parent does not meet the definition of a free appropriate public education. *Florence County School Dist. Four v. Carter*, 510 U.S. 7, 13 (1993). This remedy is also available to parents regardless of whether the child previously received special-education services through the public school. *Forest Grove School Dist. v. T.A.*, 557 U.S. 230  (2009).

## B.       *The Only Evidence Presented Was that the Physical Location Offered was Not Appropriate*

The child attended a DOE integrated co-teaching special education program for the second grade during the 2010-2011 school year. CA-77, 80. The integrated co-teaching classroom was taught by a general education teacher and a special education teacher. *Id.* The child spent much of the year crying and was significantly behind grade level; his reading was described as the kindergarten level. CA-80-83. This was due to his dyslexia, which was not addressed by the DOE program. CA 141-50. At the end of the 2010-2011 school year, the DOE

informed the parents that the child would be held over and repeat second grade during the 2010-2011 school year. CA-81.

On June 9, 2011, pursuant to the IDEA, the DOE committee on special education met and generated IEP for the child (the June 9, 2011 IEP") for the 2011-2012 school year. CA 223-37. Subsequently, the DOE offered the child a placement at a DOE public school. CA 153-56.

Despite the fact that the DOE knew the child was dyslexic and knew there are specific methodologies to address dyslexia, the June 9, 2011 IEP did not recommend any particular methodology. CA 223-37. The June 9, 2011 IEP did not state that the child had to be placed with any particular cohort. *Id.* The June 9, 2011 IEP did not state that the child's teacher had to have any training that might enable him or her to address his dyslexia or other difficulties. *Id.*

On or about June 20-24, 2011, the DOE sent parents a letter with notice of the child's proposed school and classroom placement; this letter was called a final notice of recommendation ("FNR"). CA 153. The FNR stated that the child would be assigned to P.S. 213. CA 153. No FNR was placed into evidence. See CA 178-237. Parents' visited P.S. 213 and did not believe that the classroom was appropriate. Specifically, the parent wrote that the placement did not have a second grade, despite the fact that was the grade being offered to the child by the DOE; additionally, the program did not have a reading program appropriate for children

with dyslexia. CA 153. On or about June 20, 2011, parents wrote a letter to the

CSE stating that the classroom recommended was not appropriate. CA 153. Parents

received a second FNR recommending P.S. 213 and again wrote to the CSE stating

that the classroom in P.S. 213 was not appropriate on July 5, 2011. CA 155. On or

about July 6, 2011, the DOE sent parents a third FNR stating that the child would

be assigned to P.S. 159. On July 11, 2011, the parent wrote a letter stating that she

was told by the DOE that she was unable to visit P.S. 159 due to the summer

session; therefore the parents would not accept or reject the program until she was

able to learn information as to whether the classroom was appropriate. CA 158.

After the start of the 2011-2012 school year, plaintiffs were able to visit P.S. 159

and found it to be inappropriate. Tr. 165-66. CA 114.

     Parents' due process complaint made specific allegations about the

appropriateness of P.S. 213:

1. The size of the school building is inappropriate for the student.

2. The teaching methodology at the proposed placement is inappropriate
   for the Student. The student requires a language-based program to
   address his dyslexia.

3. This is not a 12-month placement.

4. The other students in class do not have similar needs to the Student.

5. The student-to-teacher ratio is too large.

6.  The school building is too large.

7.  The school building is not secure.

8.  The school does not have a second grade and the CSE recommended that the child repeat second grade.

9.  The school's third grade class is mixed with the fourth grade class.

10. The school does not have an appropriate reading program.

11. The school does not offer enough 1:1 reading support.

12. The parent was concerned that the gym schedule might become inappropriate due to an impending retirement. CA 181.

The due process complaint also made allegations about PS 46.

1.  The size of the school building is inappropriate for the student.

2.  The teaching methodology at the proposed placement is inappropriate for the Student. The student requires a language-based program to address his dyslexia.

3.  This is not a 12-month placement.

4.  The other students in class do not have similar needs to the Student.

5.  The student-to-teacher ratio is too large.

6.  The school building is too large. CA 180-81.

It was unclear whether these were allegation about PS 159. Because no FNR was placed into evidence, it was unclear from the record whether the letter mistakenly referred to PS 46 or the hearing request mistakenly referred to PS 159.

None of the four DOE witnesses discussed the appropriateness of the goals on the June 9, 2011 IEP. See CA 75-89. Additionally, no witnesses testified about any proposed classroom location. There was no evidence of any of the following.

- Which of the two proposed placements the DOE was defending at the hearing;

- Whether there was a seat for the child in either proposed placement;

- Whether either proposed placement could implement the June 9, 2011 IEP; *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412 (2d Cir. 2009);

- Whether either proposed placement taught using a methodology appropriate for children with dyslexia; *M.H. v. N.Y. City Dep't of Educ.*, 685 F.3d 217 (2d Cir. 2012);

- Whether either proposed placement contained an appropriate functionally grouped cohort for the child; *Connor v. New York City Dep't of Educ.*, 2009 U.S. Dist. LEXIS 98605, 20 (S.D.N.Y. 2009), citing, 8 N.Y.C.R.R. 200.6(a)(3) and 200.6(h)(5);

11

- Whether either proposed placement was in the grade that the DOE wished to place the child (i.e. the second grade); CA 81; *V.S. v. New York City Dep't of Educ.*, 2014 U.S. Dist. LEXIS 79067 (E.D.N.Y. June 9, 2014);

- Whether either proposed placement could implement the related services recommended on the IEP;

- Whether either proposed placement could implement the child's Academic Development and Functional Needs; *Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 107-08 (2d Cir. 2007);

- Whether either proposed placement could implement the child's Social Development Needs; *Id.*;

- Whether either proposed placement could implement the child's Management Needs/Environmental and Human Material Resource Needs; *Id.*;

- Whether either proposed placement was taught by a certified special education teacher. See CA 75-89.

At hearing the parent testified that the placements she saw were not appropriate.

The first attempt was I was PS230 [sic], I'm not quite sure, and it was for a second-grade classroom. I personally didn't think holding him over was appropriate. Plus the classroom consisted of probably 7 or 8

paras along with maybe 10 or 12 children, and I felt if [the child's name] was put in there he would shut down completely.

\*\*\*

The second one was a combination third/fourth grade, which also I didn't think was an appropriate placement because if he is so behind I thought the work would be just too much and overwhelming for him. He still wouldn't get the appropriate attention that he needed to life his self-esteem and to help him academically. CA 114.

This evidence satisfies the standard under *Schaffer v. Weast*, 546 U.S. 49 (2005) since the DOE presented no evidence that the proposed school location could implement the IEP.

### C.        *Substantive Compliance with the IDEA Includes an Appropriate IEP and an Appropriate Placement*

An IEP is an individualized educational plan. 20 U.S.C. § 1414. As a plan it is analogous to a roadmap of the child's education for the school year. Like a map, it must be used in the right place or it is not effective or appropriate. Just as a map of New York is not useful in Chicago, an appropriate IEP is not useful in an inappropriate classroom.

A free appropriate public education requires an IEP and an appropriate classroom.  The structure of the IDEA and federal regulations demonstrate that an IEP must be implemented to be in effect. Here the parent alleges that the IEP could not have been implemented because the proposed classroom locations were not appropriate. The vast majority of cases have held that an IEP must be capable of being implemented to be appropriate. *R.E.* did not change that.

13

**1. The structure of the IDEA and federal regulations require that an IEP be implemented appropriately**

Federal law defines an IEP as "a written statement for each child with a disability that is developed, reviewed, and revised in accordance with" 20 U.S.C. § 1414(d). 20 U.S.C. § 1401(14); see also 20 U.S.C. § 1412 (a)(4). The IDEA requires not just an adequate written IEP program, but also an adequate program implemented in practice. See *Muller v. Committee on Special Educ. of E. Islip Union Free Sch. Dist.*, 145 F.3d 95, 105 (2d Cir. 1998) (when determining whether to grant parents relief under the IDEA, district courts should consider "whether the school district's placement pursuant to its IEP is inappropriate" (citing *School Comm. of Town of Burlington v. Department of Educ.*, 471 U.S. 359, 369 (1985).

An IEP by design is only a document and it must be **implemented in a classroom** to provide a special needs child with a free appropriate public education. See 20 U.S.C. § 1401(9)(D) (a free appropriate public education means special education and related services that are provided in conformity with the IEP); 20 U.S.C. § 1412 (a)(22)(B) (noting the states duty to ensure that appropriate IEPs are developed and implemented); 34 C.F.R. § 300.101(b)(ii) (noting that an IEP must be "in effect" to provide a free appropriate public education); 34 C.F.R. §323 (noting that an IEP must be "in effect" at the beginning of the school year). An IEP cannot be in effect or implemented without a physical school and classroom location. Most importantly the IDEA requires not only that the IEP be

appropriate, but also that the special education and related services are provided

"in conformity with" the IEP. This is why this court has held that a school district

cannot assign a child to a classroom or location that cannot implement the IEP.

*T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 420 (2d Cir. 2009), *cert. denied*, 560

U.S. 904 (2010). While the parents in *T.Y.* made a procedural attack on the

assignment of the placement, parents here make a substantive attack on the

placement. That substantive attack was not defended and as such the district cannot

have provided the child with a free appropriate public education.

### 2. The vast majority of cases supports the conclusion that an IEP must be implemented in an appropriate classroom

Cases from the Supreme Court to District Courts have analyzed IEPs as

plans that must be implemented. *Forest Grove Sch. Dist. v. T. A.*, 557 U.S. 230,

242 (2009) (noting parents and districts need to work together "developing and

implementing an appropriate IEP"); *Sch. Comm. of Burlington v. Dep't of Educ.*,

471 U.S. 359, 370 (1985) (noting parents remedy when denied a free appropriate

public education is an injunction to "develop and implement at public expense an

IEP placing the child in a private school"); *Board of Educ. v. Rowley*, 458 U.S.

176, 188 (1982) (noting that a free appropriate public education is special

education and related services "provided in conformity with the individualized

education program"); *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167, 192-93

(2d Cir. Sept. 20, 2012), *cert. denied*, 133 S. Ct. 2802 (2013) ("The Department

may select the specific school without the advice of the parents so long as it conforms to the program offered in the IEP."); *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 420 (2d Cir. 2009) (a school district cannot assign a child to a school that cannot satisfy the IEP); *Sumter County Sch. Dist. 17 v. Heffernan*, 642 F.3d 478, 484 (4th Cir. 2011) (material failure to implement the IEP violates the IDEA); *R.H. v. Plano Indep. Sch. Dist.*, 607 F.3d 1003, 1014 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 1471 (2011) (noting that the district court appropriately asked whether the IEP could be implemented in a regular classroom); *A. M. v. Monrovia Unified Sch. Dist.*, 627 F.3d 773, 781 (9th Cir. 2010) (noting that the argument regarding non-implementation of the IEP failed because the at issue IEP was implemented); *Van Duyn v. Baker Sch. Dist.*, 502 F.3d 811, 822 (9th Cir. 2007) (holding that a material failure to implement the IEP in a classroom is a violation of the IDEA); *Brillon v. Klein Indep. Sch. Dist.*, 100 Fed. Appx. 309, 313 (5th Cir. 2004) (noting that the IEP was appropriate, but that the modifications necessary to implement the program in a regular education program were unduly burdensome); *Neosho R V Sch. Dist. v. Clark*, 315 F.3d 1022, 1027, fn 3 (8th Cir. Mo. 2003) ("we cannot conclude that an IEP is reasonably calculated to provide a free appropriate public education if there is evidence that the school actually failed to implement an essential element of the IEP that was necessary for the child to receive an educational benefit."); *T.R. ex rel. N.R. v. Kingwood Twp. Bd. of Educ.*, 205 F.3d

572 (3d Cir. 2000) (remanding to the district court to determine whether there was a classroom available to implement the IEP); *Sacramento City Unified Sch. Dist., Bd. of Educ. v. Rachel H. by & through Holland*, 14 F.3d 1398, 1401 (9th Cir. 1994), *cert. denied*, 512 U.S. 1207 (1994) (affirming the lower court's finding that the IEP goals could be implemented in a regular education classroom); *S.F. v. N.Y. City Dep't of Educ.*, 2011 U.S. Dist. LEXIS 129672 (S.D.N.Y. Nov. 9, 2011) ("This record amply shows that the IEP, as implemented in the placement classroom was reasonably calculated to provide the Student a free appropriate public education despite her distractibility."); *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 668 (S.D.N.Y. 2011) (noting that the only issue on prong one of the Burlington Carter test was the appropriateness of the particular "recommended placement"); *Wilson v. District of Columbia*, 770 F. Supp. 2d 270, 275 (D.D.C. 2011) (material failure to implement an IEP violates the IDEA); *X v. New York State Educ. Dep't*, 975 F. Supp. 546, 561 (S.D.N.Y. 1997) ("To provide a free appropriate public education to a student with disabilities, the school district must not only develop the IEP, but it also must implement the IEP in accordance with its requirements."); *Doe v. Hampden-Wilbraham Reg'l Sch. Dist.*, 715 F. Supp. 2d 185, 195 (D. Mass. 2010) ("To provide a free appropriate public education to a student with disabilities, the school district must not only develop the IEP, but it also must implement the IEP in accordance with its requirements.");

17

*Wilkins v. District of Columbia*, 571 F. Supp. 2d 163, 167 (D.D.C. 2008) ("Once developed, the IEP is then implemented through appropriate placement in an educational setting suited to the student's needs."); *O.O. ex rel. Pabo v. District of Columbia*, 573 F. Supp. 2d 41, 53 (D.D.C. 2008) (The district "must also implement the IEP, which includes offering placement in a school that can fulfill the requirements set forth in the IEP."); *Damian J. v. Sch. Dist. of Phila.*, 2008 U.S. Dist. LEXIS 4560 (E.D. Pa. Jan. 22, 2008) (ordering partial summary judgment for parents and ordering compensatory education due to the district's failure to implement part of the IEP); *J.P. v. County Sch. Bd.*, 447 F. Supp. 2d 553, 572 (E.D. Va. 2006) (holding that the failure to implement discrete trials was a material breach of the IDEA entitling parents to tuition reimbursement the following school year); *Burke v. Keenum*, 1989 U.S. Dist. LEXIS 1666 (S.D. Ga. 1989) (noting that an IEP must be implemented).

Here parents alleged that a free appropriate public education could not be provided in the proposed classroom for several reasons that were outlined in the hearing request. The DOE did not put on any witnesses to counter that assertion even though it had the burden of proof on that issue under New York law. NY Educ. Law § 4404(1)(c).

Under the IDEA, a parent may file a "complaint . . . with respect to any matter relating to the identification, evaluation, or educational placement of the

child, or the provision of a [free appropriate public education] to such child." 20

U.S.C. § 1415 (b)(6)(A), quoted in *M.H. v. New York City Dep't of Educ.*, 685 F.3d

217 (2d Cir. 2012). Here parents alleged specific problems with the proposed

educational physical classroom locations. CA 180-82. Even if the word placement

is limited to mean "placement on the continuum" the phrase "or the provision of a

[free appropriate public education] to such child" clearly includes attacks on a

proposed physical school location. *T.Y.*, 584 F.3d at 419. Otherwise parents would

have no remedy when they were offered a school that could not implement the IEP.

In *M.H.* the court examined whether a parent could argue that the proposed

classroom's methodology was inappropriate when the issue of methodology was

not pled in the impartial hearing request. While the appellate decision in *M.H.*

speaks in terms of the IEP, it is clear from the lower court's decision that the issue

of methodology was raised in the context of the proposed classroom placement, not

the IEP. *M.H. v. New York City Dep't of Educ.*, 712 F. Supp. 2d 125, 149

(S.D.N.Y. 2010), *aff'd*, 685 F.3d 217 (2d Cir. 2012) ("the school personnel at P 94

[at P.S. 15] are well trained in various teaching methods"). Furthermore, the lower

court explicitly examined the "inappropriateness of the Classroom." 712 F. Supp.

2d at 161-163. The court found that the placement of P94 at P.S. 15 was not

appropriate due to the methodology used:

> Accordingly, the Court adopts the IHO's conclusion that the DOE
> substantively violated the IDEA when it recommended that P.H. be

19

> placed in [P94 at] P.S. 15, a school that could not fulfill his
> educational needs. 712 F. Supp. 2d at 163.

Thus, the district court explicitly held that the classroom placement at P94 at P.S.

15 was a substantive violation of the IDEA. The Second Circuit upheld that

finding. Here the parent alleged that the DOE placed the child in a classroom that

could not fulfill his educational needs as a child with dyslexia. The DOE put on no

evidence to rebut that allegation.

The Second Circuit, in *M.H.*, specifically noted district court's holding on

the proposed classroom placement, "The [district] court also accepted the IHO's

determination that the classroom identified for P.H. was not appropriate." 685 F.3d

217, 232. While the Second Circuit was primarily concerned with the issue of

deference, rather than substantive appropriateness, in upholding the district court's

decision on methodology, the Second Circuit found that the methodology used by

the classroom placement proposed by the district was part of the "substantive

adequacy of the IEP." 685 F.3d 217, 252. Here parents attack the "substantive

adequacy of the IEP" by arguing that the DOE did not offer a school that could

appropriately implement that placement. *Id.*

The Second Circuit has also noted that school districts do not "have carte

blanche to assign a child to a school that cannot satisfy the IEP's requirements."

*T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 420 (2d Cir. 2009). Although the

court in *T.Y.* held that parents have no right to choose the school in consultation

with the district, the district still has an obligation to choose a classroom that is appropriate. *Id.* Here parents make no allegation that they were procedurally entitled to choose the actual placement, only that they need to have been able to visit it to determine whether it was appropriate for the child. The district may not have committed a procedural error. However, the physical placement was substantively inappropriate.

In *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2d Cir. Sept. 20, 2012) the Second Circuit addressed whether the school district can present testimony that rehabilitates how an IEP would be implemented in a classroom placement. The court held that although "testimony that materially alters the written plan is not permitted, testimony may be received that explains or justifies the services listed in the IEP." 694 F.3d at 186. The *R.E.* court also noted that in an impartial hearing "both parties are limited to discussing the placement and services specified in the written plan and therefore reasonably known to the parties at the time of the placement decision." 694 F.3d at 187. As such, it is not that the school placement is irrelevant, but the issue is whether the placement could implement the IEP as written and what was known to the parties at the time of the placement decision. Here parents have alleged that the placement could not appropriately implement the IEP or provide the child with a free appropriate public education. They have also alleged that this was known to one or both parties at the time of the

placement decision. Nonetheless the DOE did not put in any evidence to rebut the parents' position. The Court in *R.E.* went on reaffirm the holding in *T.Y.* "The Department may select the specific school without the advice of the parents so long as it conforms to the program offered in the IEP." 694 F.3d 192-93.

In addition to the substantive requirements of the IDEA, New York State law provides that children may be grouped together in a special education class only if they have the same disabilities or if they have differing disabilities but similar individual needs for the purpose of being provided a special education program. *E.S. & M.S. v. Katonah-Lewisboro Sch. Dist.*, 742 F. Supp. 2d 417, 435 (S.D.N.Y. 2010), quoting 8 N.Y.C.R.R. § 200.1(jj); see also 8 N.Y.C.R.R. § 200.6(g)(3) (quotation marks omitted); see also *E.M. v. New York City Dep't of Educ.*, 2011 U.S. Dist. LEXIS 29074, 24-25 (S.D.N.Y. 2011)*, vacated and remanded,* 2014 U.S. App. LEXIS 13257 (2d Cir. July 11, 2014). Similarly, in *M.P.G. v. New York City Department of Education*, 2010 U.S. Dist. LEXIS 88777 (S.D.N.Y. 2010) the court examined the substantive compliance with this IDEA, which included "functional grouping" as well as excessive age range; student behavior; and teacher inexperience.

New York law also requires that classrooms be grouped by age as well as by "academic and educational achievement, social development, physical development, and management needs." *Connor v. New York City Dep't of Educ.*,

2009 U.S. Dist. LEXIS 98605, 20 (S.D.N.Y. 2009), citing, 8 N.Y.C.R.R. 200.6(a)(3) and 200.6(h)(5). The primary difference between the instant case and *E.S.*, *E.M.*, *M.P.G.*, and *Connor* is that in those cases there was evidence presented as to the efforts to functionally and age appropriately group the children in those classrooms. Here we have no evidence whatsoever of the grouping in the child's proposed classroom other than the parent's testimony that it was not appropriate. As such there is no evidence that the proposed school location was appropriate.

Among the reasons parents alleged that the proposed classrooms were not appropriate were the following: The children did not have similar needs to the child. CA 180-82. The child has average intelligence but significant reading difficulties due to his dyslexia; there is no evidence whatsoever in the record as to the abilities of the other children in the proposed classroom or whether it would have been appropriate for the child to be educated with them. CA 145-46.

Numerous cases in New York District Courts have addressed problems in a proposed classroom separately from issues with the IEP. *E.A.M. v. N.Y. City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 143266, 30-31 (S.D.N.Y. 2012) ("a parent may challenge the adequacy of a placement classroom—even if the child never enrolled in the school—if the alleged defects were reasonably apparent to either the parent

or the school district when the parent rejected the placement);[1] *K.L. v. New York City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 124460 (S.D.N.Y. 2012), *aff'd,* 530 Fed. Appx. 81 (2d Cir. 2013) (examining whether a proposed classroom placement could meet the child's related services mandate); *S.F. v. N.Y. City Dep't of Educ.*, 2011 U.S. Dist. LEXIS 129672, 41-42 (S.D.N.Y. Nov. 9, 2011) ("The plaintiffs' chief argument concerning the alleged denial of a free appropriate public education to the Student is that the Placement Classroom selected by the DOE is not appropriate to meet the Student's educational needs."); *N.Y. City Dep't of Educ. v. V.S.*, 2011 U.S. Dist. LEXIS 83309 (E.D.N.Y. 2011) (noting, among other issues, problems with the proposed school and classroom placement); *M.H. v. New York City Dep't of Educ.*, 2011 U.S. Dist. LEXIS 17306, 38-39 (S.D.N.Y. Feb. 16, 2011) (examining whether the class size of the proposed general education classroom was too large); *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, 668 (S.D.N.Y. 2011) (noting that the only issue on prong one of the Burlington Carter test was the appropriateness of the particular "recommended placement"); *W.T. v. Bd. of Educ. of the Sch. Dist. of N.Y. City*, 716 F. Supp. 2d

---

[1] What is "reasonably apparent" must include what a parent could learn if they were given the opportunity to visit a school. Otherwise a district could avoid its responsibility to provide appropriate placements by sending out letters over the summer when parents are unable to visit the proposed school and classroom. Thus a parent who was not able to visit because the FNR was sent over the summer would be in a significantly more difficult legal position than a parent who was able to visit in the spring. This is unfair, especially since the district determines the timing of the letters.

270, 290 (S.D.N.Y. 2010) ("The Parents' primary substantive complaint is that the DOE's proposed placement at P.S. 2 would have put J.T. in a class whose students had an age range greater than thirty-six months and an even greater range of academic achievement, in violation of the New York State regulations."); *M.S. v. New York City Dep't of Educ.*, 2010 U.S. Dist. LEXIS 144666, 68-69 (S.D.N.Y. 2010), *aff'd, M.H. v. New York City Dep't of Educ.*, 685 F.3d 217 (2d Cir. 2012) ("I further share their concern that D.S. would not progress at P.S. 94."); *M.P.G. v. New York City Department of Education*, 2010 U.S. Dist. LEXIS 88777 (S.D.N.Y. 2010) (examining whether "functional grouping," excessive age range, student behavior, and teacher inexperience in the proposed placement affected whether the child was provided with a free appropriate public education); *Thies v. N.Y. City Bd. of Educ.*, 2008 U.S. Dist. LEXIS 11354, 8-9 (S.D.N.Y. Feb. 4, 2008) (examining whether the proposed placement was appropriate); *Wall by Wall v. Mattituck-Cutchogue Sch. Dist.*, 945 F. Supp. 501, 511 (E.D.N.Y. 1996) (examining functional grouping and other classroom issues).

*J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635, is particularly persuasive because the court noted, "there is simply not enough in the record to determine whether Summit could implement J.G.'s IEP, or whether placing J.G. there was reasonably calculated to enable her to achieve educational benefits." 826 F. Supp. 2d 635, 669. Here there is no evidence in the record that would enable one

to determine whether the placement offered to the child was appropriate or capable of implementing his IEP. While *J.S.* involved a private placement and here the issue is a public placement, the burden of proof that the classroom is appropriate is not different. In *J.S.* "Much of the description of Summit's program contained in the record is found in A.G.'s testimony or the Parents' evidence, not the District's." 826 F. Supp. 2d 635, 669. Here also the only evidence regarding the proposed classroom came from the parents' letters and G.O.'s testimony. See CA 151-58, 114. The district did not put in one iota of evidence as to the proposed placement.

Cases in other jurisdictions have also examined or explicitly held that part of providing a free appropriate public education is providing a classroom placement. *A.K. v. Alexandria City Sch. Bd.*, 484 F.3d 672, 682, *reh'g en banc denied*, 497 F.3d 409 (4th Cir. 2007), *cert. denied*, 552 U.S. 1170 (2008) (When "the parents express doubt concerning the existence of a particular school that can satisfactorily provide the level of services that the IEP describes, the IEP must identify such a school to offer a free appropriate public education."); *O.O. ex rel. Pabo v. District of Columbia*, 573 F. Supp. 2d 41, 53 (D.D.C. 2008) (explicitly examining the proposed classroom placement and noting that the district "must also implement the IEP, which includes offering placement in a school that can fulfill the requirements set forth in the IEP."). As such, the requirement to demonstrate the

appropriateness of a particular classroom placement is not merely a function of New York law placing the burden of proof on the district, but also part of the IDEA. See NY Educ. Law § 4404(1)(c). For all of the foregoing reasons it is submitted that the district did not meet its burden of proof that it provided the child with a free appropriate public education.

**D.        *R.E. Did Not Hold that the Classroom Location was Irrelevant***

In *R.E. v. New York City Dep't of Educ.*, 694 F.3d 167 (2d Cir. 2012) the Second Circuit addressed whether a school district can present testimony that rehabilitates how an IEP would be implemented in a classroom placement. The court held that although "testimony that materially alters the written plan is not permitted, testimony may be received that explains or justifies the services listed in the IEP." 694 F.3d at 186. The *R.E.* court also noted that in an impartial hearing, "both parties are limited to discussing the placement and services specified in the written plan and therefore reasonably known to the parties at the time of the placement decision." 694 F.3d at 187). As such, it is not that the placement is irrelevant, but the issue is whether the placement could implement the IEP as written. The Court in *R.E.* went on to reaffirm the holding in *T.Y.:* "The Department may select the specific school without the advice of the parents so long as it conforms to the program offered in the IEP." 694 F.3d at 192-93).

27

The court in *R.E.* also noted, "Our evaluation must focus on the written plan offered to the parents, however. Speculation that the school district will not adequately adhere to the IEP is not an appropriate basis for unilateral placement." 694 F.3d 167, 195. The next sentence by the court stated, "A suggestion that some students are underserved cannot overcome the "particularly important" deference that we afford the SRO's assessment of the plan's substantive adequacy." In context, it is clear that the court only meant that allegations based on statistical evidence cannot overcome the deference owed to the SRO who examined evidence of the program's appropriateness. *Id.* The holding about statistical evidence was correct. Not every school can meet a standard of perfection in providing related services.

However, *R.E.* cannot eliminate implementation at a location from a court or a hearing officer's analysis. Too many courts have found that a proposed school location could not implement a critical component of the IEP. If *R.E.* meant that all examination of implementation were speculation then no school location would ever be inappropriate. Too many cases have found this not to be the case. *M.H. v. New York City Dep't of Educ.*, 685 F.3d 217 (2d Cir. 2012) (methodology); *D.C. ex rel. E.B. v. New York City Dep't of Educ.*, 950 F. Supp. 2d 494 (S.D.N.Y. 2013) (seafood free environment); *B.R. v. New York City Dep't of Educ.*, 910 F. Supp. 2d 670 (S.D.N.Y. 2012) (sensory needs); *V.S. v. New York City Dep't of Educ.*, 2014

U.S. Dist. LEXIS 79067 (E.D.N.Y. June 9, 2014) (age appropriate grouping); *J.S. v. Scarsdale Union Free Sch. Dist.*, 826 F. Supp. 2d 635 (S.D.N.Y. 2011) (noting that the school could not implement the IEP appropriately). If implementation by the placement location is not a live issue after *R.E.* all of these cases where implementation was not appropriate would be decided differently and parents would not be entitled to reimbursement even though the school location was not appropriate. That cannot be the holding of *R.E.*

Since *R.E.*, the Second Circuit has issued several cases that touch upon the issue. Those cases reaffirm the holding of *R.E.* that hearing officers and courts may not justify a deficient IEP by relying on the different services in the proposed placement. "Parents are entitled to rely on the IEP for a description of the services that will be provided to their child." *P.K. v. New York City Dep't of Educ.*, 526 Fed. Appx. 135, 141 (2d Cir. 2013). However, the Second Circuit has never held that testimony about a placement is irrelevant when the parent alleges that the proposed placement cannot implement the IEP appropriately. Most recently in *Reyes v. N.Y. City Dep't of Educ.*, 2014 U.S. App. LEXIS 14224 (2d Cir. July 25, 2014) the court reaffirmed *R.E.*'s holding that retrospective testimony could not be used to cure a defective IEP. However, the court did not eliminate examination of whether a proposed placement could appropriately implement an IEP. "Because we find for Reyes on another ground, we need not and do not address these issues. However,

we do note that, to the extent that the SRO relied on retrospective testimony to dismiss Reyes's concerns about the TEACCH methodology, such reliance was inappropriate under R.E." *Id.* at * 26. The court is clear, whether the methodology or other concerns about a placement were appropriate for the child are proper subjects to examine, but retrospective testimony cannot be used to address such issues. Similarly, the court in *E.M. v. New York City Dep't of Educ.*, 2014 U.S. App. LEXIS 13257 (2d Cir. July 11, 2014) noted that testimony about implementation must be "extrinsic to any written education plan." *Id.* at *56-57. Again, the Court did not limit the issue, it limited the type of testimony that was admissible. Here there was no testimony by the district whatsoever. In *Ward v. Bd. of Educ. of the Enlarged City Sch. Dist. of Middletown*, 2014 U.S. App. LEXIS 10052 (2d Cir. May 30, 2014) the court examined whether a proposed out of district placement, Devereux-Glenholme was appropriate.

The Second Circuit's most explicit statement regarding what is permissible testimony about the appropriateness of a placement and what is impermissible speculative testimony came in *F.L. v. N.Y. City Dep't of Educ.*, 553 Fed. Appx. 2 (2d Cir. 2014). Although this decision was not published, it is the clearest pronouncement of the line between permissible and impermissible testimony about a proposed placement location.

> In urging otherwise, plaintiffs cite to *B.R. ex. rel. B.O. v. N.Y.C. Dep't of Educ.*, 910 F. Supp. 2d 670 (S.D.N.Y. 2012), another case

involving an autistic child, in which the IEP identified a need, inter
alia, for three half-hour 1:1 occupational therapy sessions per week
outside the classroom, see *id.* at 676. There, the parents' contention
that such services would not be provided in the recommended
placement was not based on general implementation concerns drawn
from other cases. Rather, it was based on a specific statement to the
child's mother from the proposed school's occupational therapist that
 "occupational therapy at the school was provided in a group of six
students four days a week, inside the classroom," *id.*, which was then
confirmed in the testimony of the school's assistant principal, see id. at
677. In these circumstances, where the school district sought to rely
on testimony contradictory to what the parents had been told at the
time of the placement decision, the district court construed *R.E.*'s
retrospective testimony bar to apply. Assuming without deciding that
this properly construes *R.E.*, the related services testimony at issue in
this case does not contradict anything told to the parents before the
placement decision; it merely explains how the DOE intended to
satisfy the IEP's related services requirements. *Id.* at *5-7 (citations in
original).

The line drawn by the Court in *F.L.* "general implementation concerns drawn from

other cases" was not sufficient to render a placement location inappropriate,

however, "a specific statement about the program" that the IEP would not be

implemented was admissible and sufficient to render a placement location

inappropriate. *Id.* However, in both instances testimony about implementation of

the IEP was allowed and not impermissible retrospective testimony. *R.E.* did not

take implementation at the location off the table as an issue. *R.E.* merely limited

that discussion to the implementation of the IEP. For the parent, *R.E.* provided that

an inappropriate IEP could not be corrected through testimony about the school

location. For the district, *R.E.* provided that implementation concerns could not be

based on general statistical data, but rather had to be based on specific implementation concerns. Here the parent had specific concerns about the functional grouping, methodology, the failure to address the child's dyslexia, and no classroom of the appropriate grade. CA 180-82.

A statement in one Second Circuit case, however, does lean towards an analysis of the IEP exclusively. *K.L. v. New York City Dep't of Educ.*, 530 Fed. Appx. 81, 87 (2d Cir. 2013) ("In particular, '[t]he appropriate inquiry is into the nature of the program actually offered in the written plan,' not a retrospective assessment of how that plan would have been executed. *R.E.*, 694 F.3d at 187.") (citation and quotation marks in original). However, it is clear that the lower court engaged in an extensive substantive analysis of the proposed placement location and found it to be appropriate. *K.L. v. New York City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 124460, *39-45 (S.D.N.Y. 2012). As such the statement by the Circuit in *K.L.* should be taken as misplaced dicta in a case that was argued overbroadly.

Most District Courts have not adopted an interpretation of *R.E.* that it forecloses examination of the physical location. The court in *J.F.* squarely addressed the issue whether a proposed classroom must be proven appropriate. *J.F. v. N.Y. City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 63178 (S.D.N.Y. Apr. 24, 2013) explicitly rejects arguments that *R.E.* foreclosed evidence or examination of

the placement. The court held that the only areas that are foreclosed are 1.

"[E]vidence of historical imperfection in a school's implementation of other

students' IEPs is too speculative a basis to challenge the ability of a school to

implement the IEP of a student who has never attended that school." And 2.

Precludes "parents from citing evidence about the proposed classroom placement

that would not have been available at the time of filing the due process complaint."

*Id.* at *4. The court specifically cites to state regulations about functional

groupings as a reason to examine placements.

Other cases post *R.E.* have addressed problems with the proposed classroom

or remanded to the hearing officer for determination of issues related to the

classroom placement. *F.L. v. N.Y. City Dep't of Educ.*, 2012 U.S. Dist. LEXIS

149296 (S.D.N.Y. 2012), *aff'd,* 553 Fed. Appx. 2 (2d Cir. 2014); *E.A.M. v. N.Y.

City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 143266, at *30-31 (S.D.N.Y. 2012)

("[T]he record supports the inference that the alleged defects about which the

Parent complains were reasonably apparent to the District when the Parent rejected

P.S. 265."); *J.F. v. N.Y. City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 170637

(S.D.N.Y. 2012), *reh'g denied*, 2013 U.S. Dist. LEXIS 63178 (S.D.N.Y. Apr. 24,

2013), ("[T]he adequacy of N.F.'s proposed classroom placement involves

important questions of state educational policy and requires educational expertise

to resolve. It is a question this Court is ill-equipped to decide in the first instance.

As neither the IHO nor the SRO has reached that issue, this Court remands that question to the IHO."); *A.D. v. N.Y. City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 38757 (S.D.N.Y. Mar. 19, 2013); *F.L. v. N.Y. City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 149296 (S.D.N.Y. 2012); *Reyes v. N.Y. City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 175329 (S.D.N.Y. Dec. 11, 2012); *B.R. v. N.Y. City Dep't of Educ.*, 2012 U.S. Dist. LEXIS 182305 (S.D.N.Y. Dec. 26, 2012) (holding the classroom inappropriate because it could not meet the child's sensory needs); *D.N. v. Walcott*, 2012 U.S. Dist. LEXIS 177522 (S.D.N.Y. Dec. 7, 2012) (remanding for unaddressed claims*), stay pending appeal denied*, 2013 U.S. Dist. LEXIS 9143 (S.D.N.Y. Jan. 22, 2013); *F.B. v. N.Y. City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 20221 (S.D.N.Y. 2013) (remanding for unaddressed claims, including whether "the proposed goals could not have been implemented in the recommended program" and whether "the assigned school was inappropriate."); *B.M. v. N.Y. City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 68526 (S.D.N.Y. May 14, 2013), *aff'd,* 2014 U.S. App. LEXIS 11406 (2d Cir. June 18, 2014) (examining whether a classroom teacher's lack of credentials made the classroom inappropriate); *T.L. v. N.Y. City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 53090 (E.D.N.Y. Apr. 12, 2013) (remanding to determine whether the proposed classroom could address the child's Pica, a neurological disorder); *D.C. ex rel. E.B. v. N.Y. City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 42764 (S.D.N.Y. Mar. 25, 2013) (holding a proposed school

34

inappropriate because it did not address the child's seafood allergy); *J.M. v. New York City Dep't of Educ.*, 2013 U.S. Dist. LEXIS 159533 (S.D.N.Y. Nov. 7, 2013) (remanding for a determination of whether the proposed DOE school was appropriate, and other issues).

Testimony from school district personnel is critical because they can clarify what the school is and is not able to offer. *V.S. v. New York City Dep't of Educ.*, 2014 U.S. Dist. LEXIS 79067 (E.D.N.Y. June 9, 2014) (noting that the assistant principal of the proposed placement location explained that the school was not age appropriate). An examination of the ability of the physical location is not by definition impermissible retrospective testimony.

> The proper inquiry for the Court, therefore, is whether the alleged defects of the placement were reasonably apparent to Plaintiff or the DOE when Plaintiff rejected P373K. The record supports the inference that the alleged defects were reasonably apparent to both parties at that time. *Scott v. N.Y. City Dep't of Educ.*, 2014 U.S. Dist. LEXIS 41283 (S.D.N.Y. Mar. 25, 2014)

Here, the hearing request, parent's letters, and parents' testimony demonstrate that it was apparent that the child was not offered a physical classroom that was appropriate. The DOE failed to rebut that evidence, therefore, the evidence did not support a finding that the child was provided with a free appropriate public education.

**POINT II: A SCHOOL DISTRICT PROPOSED PLACEMENT UNDER THE IDEA CANNOT BE FOUND APPROPRIATE WHEN THE DISTRICT DOES NOT PRESENT ANY EVIDENCE OF THE LOCATION'S ABILITY TO IMPLEMENT THE INDIVIDUALIZED EDUCATION PROGRAM UNDER NEW YORK STATE LAW, WHICH PLACES THE BURDEN OF PRODUCTION ON SUCH ISSUE ON THE SCHOOL DISTRICT**

In 2005, the Supreme Court held, "The burden of proof in an administrative hearing challenging an IEP is properly placed upon the party seeking relief." *Schaffer v. Weast*, 546 U.S. 49, 62 (2005). In the vast majority of these cases it is the parent seeking relief from the school district. New York State, however, shifted the burden to the school district. Specifically NY Educ. Law §4404(1)(c) was amended on October 14, 2007 to place the burden of proof on school districts in IDEA cases. N.Y. Laws 2007, c. 583; see *J.G. v. Kiryas Joel Union Free Sch. Dist.*, 777 F. Supp. 2d 606, 641 FN 29 (S.D.N.Y. 2011). This change was done in response to *Schaffer* to restore prior New York State policy.

> Nolan's Burden of Proof bill was drafted in response to the 2005 Supreme Court case of *Schaffer v. Weast* which placed the burden of proof on parents. The case overruled a New York State policy that was in place for more than 30 years which had given school districts the legal and financial responsibility for providing proof. Advocates for parents of students with disabilities claimed that shifting the burden of proof discouraged families from requesting IEP hearings because they lacked the information, skills or financial resources to hire an attorney. 2007 Update from the New York State Assembly, Education Committee, December 2007 (available online at http://assembly.state.ny.us/comm/Ed/20071030/ (checked 8/5/2014).

As such in this case the school district had the burden of proof that it provided the child with a free appropriate public education, including whether a

proposed physical location could appropriately implement the IEP. NY Educ. Law § 4404(1)(c).

> The board of education or trustees of the school district or the state agency responsible for providing education to students with disabilities shall have the burden of proof, including the burden of persuasion and burden of production, in any such impartial hearing, except that a parent or person in parental relation seeking tuition reimbursement for a unilateral parental placement shall have the burden of persuasion and burden of production on the appropriateness of such placement. NY Educ. Law § 4404(1)(c).

So, in New York, even though it is the family that must file the complaint, it is always the district that has the burdens of proof with respect to all aspects of the proceeding (except, in cases seeking reimbursement for a unilateral private school placement, with respect to the demonstration of the appropriateness of that unilateral placement). In New York, the district must prove that it has offered a free appropriate public education, in all hearings, no matter what the nature of the family's challenge.

A family's due process complaint must detail the specific issues to be addressed in the hearing. *P.K. v. New York City Dep't of Educ*., 526 Fed. Appx. 135, 140, FN 6 (2d Cir. 2013) The allocation of the burden of proof to the district means that in every case the district must make at least a minimal showing – set out at least a prima facie case -- that it has in fact offered free appropriate public education. If it does not do so, it fails to meet its Burden of Persuasion. Any presumption that the district has provided free appropriate public education unless

shown not to have done so by the family improperly offloads the statutory allocation of the burden away from the district and onto the child.

It may seem unfair to presuppose that the school district has failed to meet its obligations, that in all cases it is guilty until it can prove its innocence. But that is precisely what the New York statute's allocation of the burdens does. NY Educ. Law § 4404(1)(c). In fact, it was precisely the intent of the New York State legislature, two years after the Schaffer decision was issued, to adopt a statute that functioned to overturn Schaffer in New York. Despite the seeming imbalance, there were and are three reasons why that allocation is neither anomalous nor inequitable, and why the legislature acted as it did. 2007 Update from the New York State Assembly, Education Committee.

First, at the IEP-drafting stage, the district can do whatever it wants. The parent has a right to participate and be heard, but the decision-making authority lies exclusively with the district, wielded in the person of the district representative in attendance at the CSE review. The parent does not even have a right, at that stage, to require that the district provide its reasoning or demonstrate the propriety of the program and placement it has offered. The parent does not have the right to participate in the choosing of the physical placement at an IEP meeting. *T.Y. v. N.Y. City Dep't of Educ.*, 584 F.3d 412, 420 (2d Cir. 2009).

38

Placing the burden of proof on the district when a family challenges a school district's recommendation by seeking a due process hearing merely rebalances the scales by countering the district's initial, universal, advantage and simply requiring the district to demonstrate the propriety of its decision before a neutral third party in light of the family's objections in the context of administrative review. This choice introduces a neutral voice to review the challenged call.

Second, placing the burden on the district reflects the legislature's awareness that the school district, not the parent, has access to the information needed to determine whether the district's offer was indeed appropriate. Allocating the burden to the parent, in a proceeding that, among other things, has no discovery phase would force the family to speculate about information that is exclusively in the district's control (such as whether there is a seat, what certifications the teacher may hold, the methodology used, and the other children in the placement).

Finally, and perhaps most compellingly, the burden of proof must be viewed in the context of the standard of proof applicable to special education cases. That standard is that the educational progress be meaningful. *Board of Educ. v. Rowley*, 458 U.S. 176 (1982). As a result, the burden that is shifted to the district is small. The district need only have someone testify that the proposed physical placement can in fact implement the IEP appropriately. If the IEP is appropriate then the district need only demonstrate that it can be implemented appropriately.

The district's prima facie case, i.e., its obligation to demonstrate that it has offered free appropriate public education is, therefore, as simple as reading *Rowley* in the context of, in New York cases, the New York State allocation of burden of proof: In every case that alleges a denial of free appropriate public education the district must demonstrate two things: First, that it actually did make a placement offer to the child. And, second, did that offer meet the *Rowley* standard and was reasonably calculated, at the time it was made, to provide meaningful educational benefit to the child.

Here the district did not place into evidence a letter specifying what physical location it offered. It did not present a witness that the physical location could implement the IEP or that it could provide a meaningful benefit. Therefore, the DOE could not have met its burden of proof under New York Law.

## **CONCLUSION**

Wherefore, parents ask that this court reverse the March 27, 2014 decision by the lower court, hold that the DOE did not provide the child with a free appropriate public education for the 2011-2012 school year and remand to the lower court for a determination whether Lowell School was appropriate for the child and whether equities support reimbursement.

Respectfully submitted,

_____/s_____
LAWRENCE D. WEINBERG
lweinberg4398
Attorney for Appellants
162 Williamson Avenue
Bloomfield, New Jersey 07003
(973) 748-3761
lawrenceweinberg@gmail.com

Date: August 11, 2014

**CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B). It contains 11,282 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6). It has been prepared in a proportionally spaced typeface using Microsoft Word for Mac 2008 in Times New Roman 14 pt.

Dated: August 11, 2014

**SPECIAL APPENDIX**

i

# Table of Contents

**Page**

Memorandum Opinion and Order of the Honorable
 Miriam Goldman Cedarbaum, Dated March 27, 2014,
 Appealed From.................................................................... SPA-1

Judgment Appealed From, Dated March 28, 2014 .................... SPA-9

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
M.O. and G.O. Individually,
and On Behalf of D.O., a Minor,

                Plaintiffs,          MEMORANDUM OPINION
                                     AND ORDER

        -against-
                                     12 Civ. 4619 (MGC)

THE NEW YORK CITY DEPARTMENT OF
EDUCATION,

                Defendant.

--------------------------------X

APPEARANCES:

        LAWRENCE D. WEINBERG
        Attorney for Plaintiffs
        233 East 89th Street, 2A
        New York, New York 10128

        By:  Lawrence D. Weinberg, Esq.


        MICHAEL A. CARDOZO, CORPORATION COUNSEL
        OF THE CITY OF NEW YORK
        Attorneys for Defendant
        100 Church Street, Room 2-192
        New York, New York 10007

        By:  Carolyn E. Kruk, Esq.
```


**Cedarbaum, J.**

Plaintiffs M.O. and G.O. bring this tuition reimbursement action for the 2011–2012 school year on behalf of their son, D.O., under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 et seq., against the New York City Department of Education ("DOE").

In June of 2011, pursuant to IDEA, a local Committee on Special Education developed an individualized education program ("IEP") for D.O., classifying him as speech or language impaired and recommending he repeat the second grade in a class with a 12:1:1 ratio of students to teacher to paraprofessional.  The IEP also recommended a variety of instruction in an Integrated Co-Teaching class, individual and group speech and language therapy, and individual and group counseling.

Following the IEP's development, the DOE sent D.O.'s parents a final notice of recommendation, informing them that D.O. was assigned to attend P.S. 213.  The parents visited the school and told the DOE that they did not believe it was appropriate for D.O. because, among other reasons, it did not have a second grade class.  In July of 2011, the DOE sent D.O.'s parents another final notice of recommendation, which assigned D.O. to P.S. 159.  His parents were unable to visit the school because of the summer recess but told the DOE that if an appropriate program and placement was not offered in a timely

manner, they would enroll D.O. in a private school.  On August 15, 2011, before D.O. attended P.S. 159 and before his parents had visited the school, D.O.'s parents informed the DOE that he would attend private school.  D.O. attended third grade at the Lowell School for the 2011–2012 school year.

D.O.'s parents, pursuant to IDEA, filed a due process complaint before an Impartial Hearing Officer ("IHO") seeking reimbursement of D.O.'s private tuition and other relief.  After an evidentiary hearing, the IHO concluded that D.O. had been provided a free appropriate public education ("FAPE"), as required by IDEA.  D.O.'s parents appealed to the State Review Officer ("SRO"), who affirmed the IHO's decision.  Most relevant to this suit, the SRO addressed the parents' challenge to the assigned classroom by reasoning that because the sufficiency of a child's educational program is determined based on the IEP itself, if it becomes clear that the student will not be educated under the IEP, "there can be no denial of a FAPE due to the failure to implement" the IEP.  Because D.O. enrolled in private school before the DOE's obligation to implement the IEP arose, the DOE was not required to present evidence that it provided services in conformity with D.O.'s IEP, and "the parents' unsubstantiated allegations regarding what might have happened had the student attended the public school are not a

basis for concluding that the district failed to offer the
student a FAPE by failing to implement the student's IEP."[1]

Plaintiffs argue that the SRO erred in finding that the DOE
was not required to proffer evidence of the appropriateness of
the assigned classroom, and thus that the SRO erred in finding
that the DOE had carried its burden of proving that D.O. was
offered a FAPE.  Although district courts review SRO decisions
with deference of varying degrees, M.H. v. New York City Dep't
of Educ., 685 F.3d 217, 241-44 (2d Cir. 2012), this aspect of
plaintiffs' challenge -- whether a certain type of evidence is
required for the DOE to meet its burden of proof -- is reviewed
de novo.  See Lillbask ex rel. Mauclaire v. Conn. Dep't of
Educ., 397 F.3d 77, 82 (2d Cir. 2005).

The Second Circuit has held that a school district may not
rely on evidence regarding the services or teachers a child
would have had to rehabilitate an otherwise deficient IEP.  R.E.
v. New York City Dep't of Educ., 694 F.3d 167, 174 (2d Cir.
2012).  The Second Circuit explained that "an IEP must be
evaluated prospectively as of the time it was created."  Id. at
187-88.  In one of the three cases consolidated before the
Second Circuit in R.E., the parents did not seriously challenge
the IEP but instead argued that the IEP would not have been

---

[1] The SRO further held that even if D.O. had in fact attended the
assigned school, there was no evidence that the DOE would have
deviated from the IEP in a material way.

4


effectively implemented in the assigned classroom.[2]  Id. at 195.
They argued that statistics from the school showed that a large
percentage of students were underserved in certain services,
including occupational therapy.  The Second Circuit affirmed the
district court's and the SRO's conclusion that the child was not
denied a FAPE, because "[o]ur evaluation must focus on the
written plan offered to the parents . . . .  Speculation that
the school district will not adequately adhere to the IEP is not
an appropriate basis for unilateral placement."  Id.

It would be inconsistent with R.E. to require the DOE to
proffer evidence regarding the actual classroom D.O. would have
attended, where it had become clear that D.O. would attend
private school and not be educated under the IEP.  See R.C. ex
rel. M.C. v. Byram Hills Sch. Dist., No. 11 Civ. 3938 (GBD),
2012 WL 5862736, at *16 (S.D.N.Y. Nov. 16, 2012) (citing R.E.,
694 F.3d at 188).  How D.O. would have fared in the classroom at
P.S. 159 and whether his IEP would have been adequately
implemented in that classroom is a matter of speculation.
D.O.'s parents enrolled him in private school before the
classroom was available to visit, and their speculation that the
classroom would not adhere to the IEP is not an appropriate
basis for their unilateral placement.  R.E., 694 F.3d at 195.

---

[2] The parents had rejected the classroom, first telling the DOE
that they would consider other classrooms but later notifying
the DOE of private school plans.  Id. at 182.

The DOE's failure to proffer evidence of what might have happened had D.O. enrolled at P.S. 159 is not a basis for concluding that the DOE failed to carry its burden in demonstrating D.O. was provided a FAPE.

Plaintiffs' citation to J.F. v. New York City Department of Education, No. 12 Civ. 2184 (KBF), 2012 WL 5984915 (S.D.N.Y. Nov. 27, 2012) at oral argument does not persuasively support their position.  The plaintiffs in J.F. did argue that the child was denied a FAPE because the specific classroom "would not provide an environment reasonably calculated to enable [the child] to receive educational benefits."  Id. at *8.  But Judge Forrest's remand of the issue to the IHO focused on procedural requirements governing the appealability of the issue, since neither the IHO nor the SRO had considered the issue and the parents had failed to appeal the issue to the SRO.  Id. at *9-*10.

Plaintiffs also argue D.O. was denied a FAPE because the IEP itself was substantively deficient.  Plaintiffs argue that the IEP was inadequate due to a variety of defects, most of which were not specifically raised before the state hearing officers and thus are not appropriate for review at this stage. 20 U.S.C. § 1415(f)(3)(B); R.E., 694 F.3d at 187-88; Garro v. Connecticut, 23 F.3d 734, 737-38 (2d Cir. 1994).  In any event, the alleged deficiencies are without merit.  Plaintiffs seek

inclusion of information in the IEP that the law does not require to appear in the IEP.  Plaintiffs also allege deficiencies in the IEP that the SRO thoroughly analyzed and decided were without merit.  The SRO's well-reasoned opinion, which reviewed in great detail the evidence from the impartial hearing and is in fact supported by the administrative record, should not be disturbed.  See M.H., 685 F.3d at 241, 244.

The complaint also alleges a procedural violation of IDEA, but plaintiffs seem to have abandoned this issue.  Their briefs do not contain argument on the issue and actually note that the DOE "may not have committed a procedural error."  It is not clear what facts form the basis of this claim, although the complaint alleges that the SRO failed to decide the appeal within the statutorily permissible time frame and that the hearing before the IHO was adjourned without the request of either party.  A child's right to a FAPE is not prejudiced by delay where a court finds that the challenged IEP was adequate. Grim v. Rhinebeck Cent. Sch. Dist., 346 F.3d 377, 381-82 (2d Cir. 2003).  Nor is a child's right to a FAPE endangered by delay when parents remove a child from public schooling before challenging the IEP and there is no suggestion that they would have altered their decision had the dispute been resolved more quickly.  Id. at 382.  Plaintiffs present no argument or

evidence that would support a finding that the delays complained
of prejudiced D.O.

     For the foregoing reasons, plaintiffs' motion for summary
judgment is denied and their complaint is dismissed.

     SO ORDERED.


Dated:    New York, New York
          March 27, 2014


                              S/_____
                                   MIRIAM GOLDMAN CEDARBAUM
                                   United States District Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------X
M.O. and G.O. Individually,
and On Behalf of D.O., a Minor,

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/28/14

                              Plaintiffs,                    12 **CIVIL** 4619 (MGC)

        -against-                                            **JUDGMENT**

THE NEW YORK CITY DEPARTMENT OF
EDUCATION,
                              Defendant.
----------------------------------------------------------X


        Plaintiffs having moved for summary judgment, and the matter having come before the

Honorable Miriam Goldman Cedarbaum, United States District Judge, and the Court, on March 26,

2014, having rendered its Memorandum Opinion and Order denying Plaintiffs' motion for summary

judgment, and dismissing their complaint, it is,

        **ORDERED, ADJUDGED AND DECREED:** That for the reasons stated in the

Court's Memorandum Opinion and Order dated March 26, 2014, Plaintiffs motion for summary

judgment is denied, and their complaint is dismissed.

**Dated:** New York, New York
        March 28, 2014

                                        **RUBY J. KRAJICK**
                        _____
                                        **Clerk of Court**

                BY:     _____
                                        **Deputy Clerk**